**UNITED STATES of America**

v.

**Gary CALDWELL, Appellant.**

**No. 71–1059.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 13, 1972.

Decided June 19, 1972.

Mr. Howard Monderer, Washington, D. C. (appointed by this court), for appellant.

Mr. Herbert B. Hoffman, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and Richard L. Cys, Asst. U. S. Attys., were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before LEVENTHAL and ROBB, Circuit Judges, and MATTHEWS,* U. S. Senior District Judge for the District of Columbia.

PER CURIAM:

This is an appeal from concurrent sentences, 6 months to 5 years, following a trial wherein appellant, Gary Caldwell, was convicted on two counts of robbery (22 D.C.Code § 2901) of a High's Dairy

* Sitting by designation pursuant to 28 U.S.C. § 294(c) (1970).

store, once on January 26, and once on February 2, 1970.

We are concerned with the District Court's denial of appellant's motion to compel the holding of a lineup attended by the identification witnesses. This motion was denied on an assumption of fact that has been undercut, and we think a remand is in the interest of justice.

## I. FACTS AND BACKGROUND

### A. *The Robbery on January 22, 1970*

On January 22, 1970, the High's Dairy Store at 1548 First Street, S.W. was robbed. Paulette Millard, an employee, testified that at about 8:30 P.M. a young man, about twenty-eight years old and five feet four inches tall, approached the cash register and said, "I want a little brown bag with everything in here in it." At this point, another employee, Sara Ethridge, came over to the cash register and gave the robber $30.81 from the drawer. Mrs. Millard testified that the robber was wearing a green, hooded army jacket, in the pocket of which he held his hand, as if he had a gun. The jacket hood was up, and the robber had the drawstrings in his mouth, but his face was exposed, and Mrs. Millard noticed that he had a scar under his left eye. When Mrs. Millard ignored him, he said, "You think I'm kidding?" However, Sara Ethridge, who was cleaning the soda machine when the robber came in, inferred that he wanted money, though she did not hear what he said, because he pointed at a paper bag, and she came over to the cash register and gave the man the money. She had an opportunity to observe him closely at this time. She later told police that he was five feet four or five, weighed about 145 or 150 pounds, and was wearing a green hooded army jacket. She testified that the robber's right eye was swollen, and "looked like it had been cut or something." After the robber left the store, Mrs. Millard followed but lost sight of him.

### B. *The Robbery on February 2, 1970*

On February 2, 1970, at about 10:00 P.M., the same High's store was robbed again. Again two employees were witnesses—Mrs. Ethridge and Mrs. Mary Ann Body, Mrs. Millard's mother. This time, Mrs. Ethridge was at the cash register when a man entered and robbed the store. She later told police he was the same man who had robbed the store on January 22. He had his hand in his pocket as if he had a gun; he was hooded, wore an army jacket, and had a cut on his right eye. During this second robbery, as well as the first, Mrs. Ethridge had ample opportunity to observe the robber. Mrs. Body was in the back room when the second robbery began, but she stepped out into the retail area before the robber fled, and she got a good look at him. Her description of the robber was substantially identical to Mrs. Ethridge's.

### C. *The Store Identification of March 18, 1970*

At about 8:00 P.M. on March 18, 1970, Gary Caldwell entered the High's store, purchased some soap powder, and left after completing his purchase. On duty that night were Mrs. Millard, out to dinner at that time, and Mrs. Body, who promptly told Police Woman Hines —one of three police officers than staking out the store—that the man who had just left was the robber. Caldwell apparently was not effectively pursued, although he only went to the laundromat next door and washed his work clothing with the soap powder he had just bought. However, being dissatisfied with the appearance of the clothes, he returned to High's to buy more soap powder. This time, after he departed, Mrs. Body again identified him to the police officers as the robber. The police located him in the laundromat. An officer asked the patrons of the laundromat to remain seated, Mrs. Body was brought from next door, and she identified Caldwell from among a group of other men. Caldwell was then taken to the back room of the High's store.

When Mrs. Millard returned from her dinner break, her mother, Mrs. Body, told her that the police had apprehended the robber. Mrs. Millard was then shown Caldwell, who was handcuffed and under police guard, and she identified him as the man who had robbed the store on January 22.

In the meantime, defendant's younger brother, Melvin, came into the store to buy a soda. When Mrs. Body saw him, she told the officers that the brother looked like he could be the robber. When one of the officers admonished her to be certain of her identification, Mrs. Body examined defendant more closely, noticed the small scar under his eye, and reaffirmed her belief that he was the culprit.

*Inability of Mrs. Ethridge To Identify Defendant at Lineup of March 24*

On March 24, 1970, a lineup was held, attended only by Mrs. Ethridge. Though she was closer to the robber on both occasions than the other person present, though she was the only witness to both robberies, and said that she recognized that the same man appeared both times, she was unable at that time to identify Caldwell in the lineup.

## II. DEFENDANT'S JULY 1970 REQUEST FOR LINEUP ATTENDED BY OTHER TWO WITNESSES

At a *Wade-Stovall* hearing held July 18, the court ruled that Mrs. Millard's March 18 identification of defendant was an overly suggestive showup, and could not be presented to the jury, but that she would be permitted to make an in-court identification.[1]

On July 7, the court had considered defendant's motion for an order for a lineup, at which he could test the ability of Mrs. Millard and Mrs. Body to identify him in unsuggestive circumstances. This motion was opposed by the Assistant U. S. Attorney. The court denied the motion on the basis of the inconvenience to the two witnesses, saying: "Well, if it were a one-witness case and there were some doubt about the identification, but there is a two-eyeball witness identification."

■ A trial judge has discretion in the interest of justice to grant a defendant's motion for a lineup, *see* United States v. Ash, 149 U.S.App.D.C. 1, 461 F.2d 92 at 104 (en banc 1972); United States v. MacDonald, 441 F.2d 259 (9th Cir.1971). And here defense counsel made it clear he was not requesting a lineup in court. We do not say this denial of appellant's motion was of itself a reversible abuse of discretion. But in giving controlling weight to the inconvenience to the identifying witnesses the trial judge indicated that a lineup would have been ordered if there had been some doubt about the identification.

■ The prosecutor put it to the court "that two of the clerks recognized him from the previous robberies" and "really there is no need at all to have a lineup in this case. You have an on-the-scene identification by two witnesses and you have the fact that the other woman was unable to make an identification at a lineup." While there is no misstatements as such, this gives the impression that there were two eyeball witnesses for each of the robberies. The prosecutor failed to say that there was only one witness from each robbery. (Defense counsel could not elucidate; he had not had discovery, and indeed understood, incorrectly, that there was only one identification witness.) The prosecutor was also aware from the file that Mrs. Ethridge, the person who failed to identify defendant at the lineup, was the only person who witnessed both robberies. Indeed, she was closest to the robber each time, and the one who told police that she recognized the culprit on his reappearance. However, the prose-

1. In view of our remand for other reasons, we do not rule on appellant's contention that the Government failed to show by convincing evidence that there was an untainted basis for an in-court identification by Mrs. Millard.

cutor's only reference to Mrs. Ethridge, beyond noting that she failed to make a lineup identification, was one that tended to discount her relative importance, on the basis that she was not at the store on March 18 "at the time he came into the High's store the third time."

In addition, the prosecutor put it that "a lineup is not necessary in this case on the representations made by the Government in the fact that the two witnesses identified him at an on-the-scene identification, which under *Wise, Russell* and those line of cases . . ." The reality is, however, that on March 18—apart from Mrs. Body's doubt when defendant's brother entered the store—Mrs. Millard, the only Government witness to the January 22 robbery, was "prodded," in the words of the District Judge, to make an identification at a palpably over-suggestive showup. This police confrontation two months after the offense was plainly too remote to come within the rule of Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), cert denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968).

In view of the erroneous assumption of the trial court, induced by the manner in which the situation was presented to the judge at the hearing, and with the pertinent facts more fully developed, we think the interest of justice will best be served by remanding the case to the trial court for a further determination of what ought to be done. It is not now possible to provide a lineup providing the same assurance as that which would have been furnished on the granting of defendant's motion, especially since the trial itself added some suggestiveness, with the defendant conspicuous at the defense table. However, a new lineup might provide some opportunity to test the strength of the original observations by the two witnesses. The District Court has authority to grant a new trial, even when there is enough evidence to go to the jury.[2] Since the case is close on the issue identified, and the overall context has elements of doubt,[3] we think it warrants a hard look by the District Court, and a fresh determination as to what action should be taken in the interest of justice.

Remanded.

---

2. *E. g.*, United States v. Wilson, 178 F. Supp. 881 (D.D.C.1959) (Holtzoff, J.)

3. Defendant stresses the fact that he is a resident of the neighborhood and a regular customer of the store; that although Mrs. Millard testified that, prior to the robbery, she had known defendant as a customer of the store on many occasions before the robbery, she did not mention to the police after the first robbery that she recognized the robber, either as a customer of the store or as a resident of the neighborhood; that her mother, Mrs. Body, did not recognize the robber as a customer, and indeed believed that she had never seen the robber except during the robbery and the night of the arrest. While none of these facts is conclusive, they constitute a context that enhances the likelihood of prejudice.