Robert Lee BERRYMAN, Appellant,

v.

UNITED STATES, Appellee.

No. 11366.

District of Columbia Court of Appeals.

Submitted Aug. 24, 1977.

Decided Oct. 7, 1977.

Melvin M. Burton, Jr., Washington, D. C., for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, Joseph B. Valder and Thomas J. Tourish, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.

NEWMAN, Chief Judge:

Convicted by a jury of assault with intent to commit rape while armed, assault with intent to comment rape, and assault with a dangerous weapon, appellant contends on appeal that the trial court committed reversible error by (1) denying his motion for a court-ordered lineup and (2) by permitting the case to go to a jury when the government had failed to establish a prima facie case. We affirm.[1]

On November 12, 1975, at approximately 7:30 p. m., complainant was accosted by a man at gunpoint in the northwest section of this city. While the previous heavy rain had stopped, it was still drizzling. It was during the hours of darkness but street lights illuminated the area. Her assailant, according to her description, was dressed in a green army jacket with a hood pulled over his head but which did not obscure his face in any manner. He commanded her to walk toward a wooded area, declaring his intention to have sexual relations with her. After being in his presence for "five minutes or so, maybe more," during which time she watched his face practically the whole time, she escaped by use of a stratagem. Running for about two blocks, she spotted a police cruiser. Upon being apprised of her plight, the policeman placed her in the scout car and began cruising the area seeking her assailant. After a journey of approximately ten blocks through the neighborhood, they arrived back at the corner where complainant had last seen her assailant when she escaped. There she saw appellant, dressed in a green army jacket with a hood over his head. She identified him to the police officer as her assailant and he was arrested. The time lapse between her escape and the subsequent identification was between five and seven minutes. No gun was recovered. Complainant "was certain" of her identification of appellant. There was "no doubt in (her) mind." She testified that the failure to recover a pistol did not lessen her certainty.

When appellant was presented in the Superior Court on November 13, 1975, the government moved for a court-ordered lineup. The court granted this motion ordering that such lineup be conducted on December 16, 1975. For reasons not shown by the record, other than that they were not occasioned by appellant, this lineup was never conducted.

After arraignment on an indictment filed on February 4, 1976, *appellant* moved for a court-ordered lineup. In support of his motion, he contended that the following factors justified granting same: (1) the complainant was "upset" when she reported the incident to the police officer and did not give a detailed description of her assailant to him; (2) the non-recovery of a gun from assailant or the vicinity; (3) this was a one-witness identification case; and (4) the government had previously agreed to a de-

---

1. Counsel for the government call to our attention that the convictions of assault with intent to commit rape and assault with a dangerous weapon are, within the facts of this case, lesser included offenses of the assault with intent to commit rape while armed conviction and thus should be vacated. *Skinner v. United States*, D.C.App., 310 A.2d 231, 233 (1973).

fense informal request for a lineup in this case which agreement was not fulfilled.[2]

The government, contending that the on-the-scene identification was entirely proper and probative, opposed this defense motion. However, it did not challenge the power and authority of the court to order such a lineup on defense motion in appropriate circumstances. The trial court hearing the motion first clearly and summarily indicated its view that it was without authority to order a lineup on defense motion. The court later modified this view somewhat and denied the motion as inappropriate in this case.

■ Appellant does not contend that he had a constitutionally protected right to a lineup on his motion. We agree that there is no such constitutional right. *See, e. g., United States v. Kennedy,* 450 F.2d 1089 (9th Cir.), *cert. denied,* 406 U.S. 924, 92 S.Ct. 1793, 32 L.Ed.2d 125 (1971); *United States v. Ravich,* 421 F.2d 1196 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). Rather, his contention is a two-fold one: (1) the trial court had authority, in the exercise of its discretion, to order an out-of-court lineup on defense motion; and (2) the denial of his motion, given the facts presented, constituted an abuse of discretion of such magnitude as to mandate reversal.

■ Although this court has not previously decided the issue of the authority of a judge to order an out-of-court lineup on the motion of a defendant, the question has been resolved affirmatively by a number of courts, both federal and state. In such cases as *United States v. Ash,* 149 U.S.App. D.C. 1, 461 F.2d 92 (1972), *reversed on other grounds,* 413 U.S. 300, 93 S.Ct. 2568, 37

L.Ed.2d 619 (1973), and *United States v. Caldwell,* 151 U.S.App.D.C. 84, 465 F.2d 669 (1972) (*Caldwell I*), the United States Court of Appeals for this Circuit has held that the trial court has authority and discretion to order an out-of-court lineup on motion of the defendant.[3] *Accord, United States v. Ravich, supra; Evans v. Superior Court of Contra Costa County,* 11 Cal.3d 617, 114 Cal.Rptr. 121, 522 P.2d 681 (1974); *State v. Boettcher,* 338 So.2d 1356 (La.1976); *People v. Maire,* 42 Mich.App. 32, 201 N.W.2d 318 (1972), and *Commonwealth v. Sexton,* 369 A.2d 794 (Pa.Super.1977); *cf. Witcher v. State,* 17 Md.App. 426, 302 A.2d 701 (1973).[4] Likewise, a number of federal and state courts have affirmed the authority of the trial court, in the exercise of its discretion, to order an informal in-court lineup procedure. *United States v. McNair,* 140 U.S. App.D.C. 26, 433 F.2d 1132 (1970); *United States v. Roberts,* 481 F.2d 892 (5th Cir. 1973); *United States v. Williams,* 436 F.2d 1166 (9th Cir. 1970) *cert. denied,* 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971); *United States v. Moss,* 410 F.2d 386 (3d Cir. 1969); *Commonwealth v. Jones,* 362 Mass. 497, 287 N.E.2d 599 (1972).[5]

■ The cases affirming the authority of trial courts to order lineups on defense motion reason their holding variously on grounds of fundamental fairness; reciprocal access to reliable identification procedures; effective judicial administration; and right to discover evidence. It is clear that as a lineup can serve to buttress an in-court identification, it is likewise a process by which the weakness of the identification evidence, if the evidence is in fact weak, may be discovered and disclosed. Thus, we join those jurisdictions which hold

---

**2.** This agreement was subsequent to the scheduled lineup on December 16, 1975 (which was not held), but before an indictment was returned.

**3.** Since both of these decisions were subsequent to February 1, 1971, they are not binding on this court. *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

**4.** *See generally:* Note, *Pre-trial Identification Procedures: The Expanded Duty to Disclose*

*Favorable Evidence,* 50 Notre Dame Lawyer 508 (1975); Comment, *Due Process Fairness Requires that Accused be given a Pre-trial Discovery Right to a Line-up,* 24 Catholic U.L.Rev. 360 (1975).

**5.** Our search of the case law has found no cases in other jurisdictions holding that the trial court lacks authority to order an out-of-court or in-court lineup on defendant's motion.

that the trial court has authority to order an out-of-court lineup on defense motion, when in the exercise of its discretion, it deems such appropriate. Generally, such a lineup may be appropriate where the defendant, on timely motion, makes a showing that eyewitness identification is materially at issue, and there exists, in the particular case, a reasonable likelihood of a mistaken identification which a lineup would tend to resolve.[6]

Having determined that the trial court did have discretion to grant appellant's lineup motion, we next turn to the issue of whether the denial thereof constituted an abuse of discretion mandating reversal of appellant's conviction.

██ The exercise of discretion, to be proper, must be guided by considerations capable of rational formulation.

> The term 'discretion' denotes the absence of a hard and fast rule. [Citation omitted.] When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. [*Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931).]

And as Mr. Justice Frankfurter said in his opinion in *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (which on this point was the opinion of a majority of the Court, see 344 U.S. at 452, 73 S.Ct. at 405) in discussing the exercise of discretion:

> Judges . . . must be left some discretion—room for assessing fact and balancing conflicting considerations of

public interest—if law is not to be a Procrustes bed.

\* \* \* \* \* \*

We must not invite the exercise of judicial impressionism. Discretion there may be, but 'methodized by analogy, disciplined by system.' Cardozo, The Nature of the Judicial Process, 139, 141 (1921). Discretion without a criterion for its exercise is authorization of arbitrariness. [*Id.* at 496, 73 S.Ct. at 441.]

██ For there to be the exercise of discretion, the court must be aware that it has authority to grant relief. *Brown v. United States*, D.C.App., 372 A.2d 557 (1977). Where discretion to grant relief exists, a uniform policy of denying relief is error. *Springs v. United States*, D.C.App., 311 A.2d 499 (1973).

Although the motions judge came perilously close to denying the motion on the stated ground of lack of authority and later on the ground of a uniform policy of denying relief even if authority existed, at the end the court *stated* that it was basing the denial on the ground that to grant it would be an abuse of discretion.[7] The government contends that this indicates a particularized exercise of discretion. While this is by no means totally clear from the entire record, we will assume that there was such and proceed to determine whether there was an abuse of discretion of such magnitude as to mandate reversal.

In urging reversal, appellant places principal reliance on *Caldwell I, supra,* and *United States v. Caldwell*, 156 U.S.App.D.C. 312, 481 F.2d 487 (1973) (*Caldwell II*). In *Caldwell I*, after finding that the denial of defendant's motion for a lineup did not constitute a reversible abuse of discretion, the court remanded for a further hearing to

---

**6.** Although not at issue here, the same principles would appear to apply to motions for in-court lineup procedures. It would appear that occasions for in-court lineups would be rare. Given the available facilities at the Metropolitan Police Department for out-of-court lineups with photographic and electronic recordation, one-way glass and the like, it would be entirely appropriate for the court, in deciding a motion for in-court lineup, to consider whether exigent

circumstances exist justifying counsel's failure to file a timely and appropriate pretrial motion for an out-of-court lineup.

**7.** "I might say, for the record, that even if I have the authority to order a line-up in this case, I feel it would be an abuse of my discretion to do so." [Tr., March 24, 1976, p. 8, lines 14–16.]

determine what action "should be taken in the interest of justice." In *Caldwell II,* after the remand resulted in no relief being afforded by the trial court, the Court of Appeals, in the exercise of its supervisory jurisdiction, vacated the conviction and directed that the indictment be dismissed.

■ The government argues that the facts in this case are starkly different from those present in *Caldwell.* We agree. While it is clear that our supervisory power enables us to act in appropriate circumstances, *In re D.M.R.,* D.C.App., 373 A.2d 235 (1977), *Wise v. United States,* D.C.App., 293 A.2d 869 (1972), the circumstances presented in this record are not appropriate for such relief. Nor do we believe that this record demonstrates an abuse of discretion mandating reversal.

■ Appellant's remaining assignments of error need not detain us long. Although stated as two separate assignments of error, in sum he contends the trial court committed reversible error in permitting a one-witness identification under the circumstances here presented to go to the jury, since on this evidence a reasonable juror must have a reasonable doubt as a matter of law.[8] The answer to this argument is contained in *Marshall v. United States,* D.C. App., 340 A.2d 805 (1975), and *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (1972). As we said in *Marshall,* so long as a reasonable juror could find the circumstances surrounding the identification convincing beyond a reasonable doubt, the case is properly submitted to the jury. *See also Crawley v. United States,* D.C.App., 320 A.2d 309, *rehearing en banc denied,* 325 A.2d 608 (1974).

■ We remand with instructions to vacate so much of the judgment of conviction as relates to indicted lesser included offenses of assault with intent to commit rape and assault with a dangerous weapon. *See* note 1, *supra.* In all other respects, the judgment of conviction is affirmed.

*So ordered.*

---

8. A pretrial motion to suppress the identification was heard and denied by the trial court. Appellant does not challenge this ruling on appeal.