**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Tran Damone MONROE, Defendant—
Appellant.**

No. 00–50035.
D.C. No. CR–98–60–AHS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2002.

Decided May 8, 2002.

Before KOZINSKI and GOULD, Circuit Judges, and CEBULL, District Judge.*

* The Honorable Richard F. Cebull, United States District Judge for the District of Mon-

MEMORANDUM **

Defendant–Appellant Tran Damone Monroe challenges numerous rulings by the district court in connection with Monroe's conviction and life sentence for conspiracy, armed robbery, and using and carrying a firearm during a crime of violence. Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our disposition.

Monroe argues the following district court rulings were in error: (1) the court failed to grant Monroe's motion for a live line-up; (2) the court failed to exclude from evidence, or at least sanitize his prior bank robbery conviction; (3) the court failed to suppress evidence based on an illegal detention and arrest; (4) the photo identification procedures used by the police were impermissibly suggestive; (5) the court counted Monroe's 1985 robbery conviction as a prior strike, even though he was a minor at the time he committed the crime; (6) the court refused to decide the validity of Monroe's 1985 conviction at the time of sentencing.

### A.  Motion to Conduct a Live Line-up

■ In determining whether to grant Monroe's motion for a live line-up, the court correctly considered several factors, including: (1) the propriety and adequacy of the pretrial identification procedures, *United States v. Estremera,* 531 F.2d 1103, 1111 (2d Cir.1976); (2) the amount of time that had elapsed since the crime, *id.;* (3) the importance of eyewitness identification to the government's case, *United States v. Domina,* 784 F.2d 1361, 1369 (9th Cir. 1986); (4) the opportunity of witnesses to view the defendant during the commission

of the crime, *United States v. Browne,* 829 F.2d 760, 764 (9th Cir.1987); and (5) the inconvenience to eyewitnesses. *United States v. Caldwell,* 465 F.2d 669, 671 (D.C.Cir.1972). The district court, in its discretion, considered these factors and decided against having a live line-up.

After a close analysis of the facts and circumstances in this case, the district court did not err in concluding that these factors weigh against conducting a live line-up. Pretrial identification procedures were adequate. At the time of the hearing on Monroe's motion for a live line-up almost a full year had passed since the robbery. Eyewitness identification was not crucial to the case, because the government had much other evidence against Monroe.

### B.  Motion to Exclude Prior Conviction

■ Fed.R.Evid. 609 provides the following in pertinent part:

... and evidence that an accused has been convicted of such a crime (punishable by death or imprisonment in excess of one year) shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused

When weighing the probative value of evidence against the potential for prejudice, we consider: (1) the impeachment value of the crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Givens,* 767 F.2d at 574, 579 n. 2 (9th Cir.1985), *citing United*

---

tana, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the

courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

*States v. Cook,* 608 F.2d 1175, 1186 (9th Cir.1979).

The district court did not abuse its discretion in failing to exclude or sanitize Monroe's prior bank robbery conviction. Monroe's conviction is "not inadmissible *per se,* merely because the offense involved was identical to that for which [he] was on trial." *United States v. Oaxaca,* 569 F.2d 518, 527 (9th Cir.1978). Prior robbery convictions can be probative of veracity, *Givens,* 767 F.2d at 580, and Monroe "placed his credibility directly at issue" by testifying that he took no part in the robbery, *id.*

Nor did the district court abuse its discretion in denying Monroe's motion to sanitize the evidence. Monroe cites no authority in support of his argument to the contrary.

## C. Motion to Suppress Evidence Based on Illegal Detention and Arrest

■ A district court's ruling on a motion to suppress is subject to de novo review. *United States v. Percy,* 250 F.3d 720, 725 (9th Cir.2001). The district court's findings of fact are reviewed for clear error. *United States v. Silva,* 247 F.3d 1051, 1054 (9th Cir.2001).

Police may make an investigatory stop if, under the totality of the circumstances, they are aware of articulable facts leading to a reasonable or founded suspicion that the person has been, is, or is about to be engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the Supreme Court specifically refused to set a definitive rule on the time limit of a lawful investigative stop, concluding instead that the court must consider the facts and circumstances of each case. The Court found that common sense and

human experience should govern rather than rigid criteria to determine whether an investigative detention is unreasonable. *Id.*

The Court has also explained that "... [i]f the purpose underlying a *Terry* stop—investigating possible criminal activity—is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry.*" *Michigan v. Summers,* 452 U.S. 692, 700, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

In the instant case, the police were justified in making the investigatory stop and detaining Monroe at approximately 9:40 a.m. The police were aware of specific facts that gave them reasonable suspicion that Monroe had just committed a robbery. A citizen reported the suspicious activity of two black males who were in the vicinity immediately after the robbery took place. When Macallister detained Monroe and questioned him about his presence in the area, Monroe's story was incredible. An officer can continue to detain a defendant during an investigatory stop when his suspicion is heightened, in order to confirm or deny his suspicions. *United States v. Head,* 783 F.2d 1422, 1425 (9th Cir.1986). Probable cause to arrest arises when police know facts and circumstances sufficient to warrant a reasonable belief that the suspect committed or was committing a crime. *United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984). The district court correctly concluded that, although the police didn't arrest Monroe after the discovery of the getaway car and the leather jacket with $585 in a pocket, they had probable cause to do so, and they certainly had reasonable suspicion to continue detaining Monroe while they investigated the scene.

The time from Monroe's initial stop to his arrest was roughly one hour and forty

four minutes. Monroe's detention for this period of time was reasonable because the police "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe,* 470 U.S. at 686, 105 S.Ct. 1568.

### D. Motion to Suppress Photospread Identification Evidence

In order to violate due process, a photographic identification procedure must be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Denham v. Deeds,* 954 F.2d 1501, 1504 (9th Cir.1992). Post-arrest photographic displays are permissible if the procedure protects the rights of the accused. *United States v. Higginbotham,* 539 F.2d 17, 23 (9th Cir. 1976).

The district court did not err in denying Monroe's motion to suppress the photo identification evidence. The photospread method used in this case was not "impermissibly suggestive." The police took adequate steps to protect the rights of Monroe. A positive identification from the photospread was obtained prior to the showing of the surveillance photograph.

### E. Prior Conviction Counted as a Strike

■ The district court's interpretation of 18 U.S.C. § 3559(c) is reviewed de novo. *United States v. Kaluna,* 192 F.3d 1188, 1192 (9th Cir.1999), *cert. denied,* 529 U.S. 1056, 120 S.Ct. 1561, 146 L.Ed.2d 465 (2000). The pertinent section of 18 U.S.C. § 3559(c) states the following:

... a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if—

(A) the person has been convicted on ... separate prior occasions in a court of the United States or of a State of....

(i) 2 or more serious violent felonies....

Monroe argues that pursuant to 18 U.S.C. § 5031 (Federal Juvenile Defense Delinquency Act), his prior conviction should not count because he was a juvenile. This argument must fail however, as this Act is applicable only to juveniles who are involved in juvenile delinquency proceedings. The State of California convicted Monroe as an adult in 1985 for robbery.

Monroe's 1985 state robbery conviction falls within the definition of "serious violent felony." The statute defines a "serious violent felony" as "a Federal or State offense, by whatever designation and wherever committed, consisting of ... robbery...." 18 U.S.C. § 3559(c)(1)(F)(i). In addition, the statute does not expressly require that the individual committing the "serious violent felony" be an adult.

The district court did not err in counting Monroe's 1985 robbery conviction as a prior strike for purposes of sentencing.

### F. Invalidity of 1985 Conviction

■ The defendant filed a motion arguing that the 1985 conviction should not count as a serious violent felony because Monroe was not advised of certain constitutional rights and there was no showing that he was properly certified as an adult.

The district court's interpretation of the Sentencing Guidelines is subject to a de novo review. *United States v. Montano,* 250 F.3d 709, 712 (9th Cir.2001). The constitutionality of a sentence imposed under the Sentencing Guidelines is reviewed de novo. *United States v. Mezas de Jesus,* 217 F.3d 638, 642 (9th Cir.2000).

In *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the

defendant was sentenced under the Armed Career Criminal provisions of 18 U.S.C. § 924(e). Other than an attack on the right to counsel, a defendant has no right to collaterally attack his prior state convictions at the time of sentencing. *Custis,* 511 U.S. at 497, 114 S.Ct. 1732. The Court concluded that "... Armed Career Criminal provisions of § 924(e) do not permit [the defendant] to use the federal sentencing forum to gain review of his state convictions. Congress did not prescribe and the Constitution does not require such delay and protraction of the federal sentencing process." *Id.*

Much like the Armed Career Criminals Act, the federal "three strikes law" (18 U.S.C. § 3559) provides no statutory right to challenge prior convictions relied upon by the government for enhancement. When Congress intends to permit such collateral attacks they have shown they have the ability to do so.[1] *Custis,* 511 U.S. at 491, 114 S.Ct. 1732.

We have held that *Custis* applies beyond the Armed Career Criminals Act to sentencing proceedings in general. *United States v. Daniels,* 195 F.3d 501, 503 (9th Cir.1999); *see United States v. Ricardo,* 78 F.3d 1411, 1415 (9th Cir.1996); *United States v. Price,* 51 F.3d 175, 177 (9th Cir. 1995). Accordingly, the district court did not err in denying Monroe the opportunity to challenge the validity of his state court convictions when he was not asserting a violation of his right to counsel.

AFFIRMED.

---

**1.** For example, the Comprehensive Drug Abuse Prevention and Control Act of 1970 provides procedures for a defendant to challenge his prior convictions when they are used to enhance his sentence.