Jesse V. BETTIS, Appellant,

v.

UNITED STATES, Appellee.

No. 6990.

District of Columbia Court of Appeals.

Argued Sept. 19, 1973.

Decided Sept. 10, 1974.

William R. Weissman, Washington, D. C., appointed by this court, with whom Joel E. Hoffman, Washington, D.C., also appointed by this court, and James Douglas Welch and Thomas W. Brunner, Washington, D.C., were on the briefs, for appellant.

Frederick C. Moss, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry and James F. Flanagan, Asst. U. S. Attys., were on the brief, for appellee.

Before NEBEKER and HARRIS, Associate Judges, and HOOD, Chief Judge Retired.

HARRIS, Associate Judge:

A six-count indictment was returned against appellant. Based upon offenses allegedly committed on three separate dates, he was charged with burglary in the second degree, grand larceny, and petit larceny. D.C.Code 1973, §§ 22–1801(b), 22–2201, and 22–2202. A plea of guilty to one burglary charge (involving the felonious entry of his mother's home) was accepted by the court, and appellant was committed to the custody of the Attorney General for a Youth Corrections Act (YCA) evaluation under 18 U.S.C. § 5010(e) (1970). Thereafter, he was sentenced as an adult. Several months later, he filed a pro se motion seeking to have his guilty plea withdrawn. The motion was denied without a hearing. We reject the arguments ably advanced on appellant's behalf, and affirm.

I

When the trial court was advised of appellant's desire to plead guilty to one of the charges (and of the government's related intention to dismiss the remaining charges), a hearing was conducted pursuant to Superior Court Criminal Rule 11. In part, the hearing transcript reflects:

THE COURT: Mr. Bettis, do you understand that you are charged with having, on or about May 25, entered the dwelling of Ada Frazier with intent to steal property. Do you understand that's the charge?

MR. BETTIS: Yes.

THE COURT: Do you understand that you have a right to trial by Court or by jury on that charge?

MR. BETTIS: Right.

THE COURT: Do you understand that if you plead guilty you won't have any right of appeal?

MR. BETTIS: No. I didn't understand that.

[DEFENSE COUNSEL]: If I may

[Pause]

MR. BETTIS: I understand.

[DEFENSE COUNSEL]: I think he understands that since there isn't any right to—there won't be any trial either by the Court or by the jury that there could be no appeal on a guilty plea.

THE COURT: Do you understand that the maximum penalty for this

charge would be—could be 2 to 15 years?

MR. BETTIS: Yes.

.    .    .    .    .    .

THE COURT: You have consulted thoroughly with your lawyer about this?

MR. BETTIS: Right.

The court accepted the guilty plea, and the government stated the factual basis for the charge. In the ensuing discussion, defense counsel noted that appellant was 21 years of age. He then stated:

> I have advised [appellant] that he could be sentenced under the Federal Youth Correction Act up to a period of 4 years in jail with 2 additional years under supervision. I further advised him, since this is a daylight burglary, I understand that it is possible that he could be sentenced under Title 2 of the Narcotic Addict Rehabilitation Act [18 U.S.C. § 4251 et seq. (1970)], and that under that act could be incarcerated up to 10 years, so he is aware that not only could he get 15—straight 15 years but he might be sentenced under these other alternatives.

The court decided upon a commitment for evaluation under § 5010(e) of the YCA. The government then advised the court that appellant had a robbery charge pending in the United States District Court for the District of Columbia, and noted that the § 5010(e) evaluation "could be completed while he was awaiting whatever disposition on those robbery charges in District Court."

The Classification Committee at The Youth Center subsequently recommended that appellant be sentenced as an adult.

That was concurred in by the Superintendent, and by the District of Columbia Board of Parole. The trial court reached the same conclusion. On August 14, 1972, appellant was sentenced to imprisonment as an adult for two to six years. Meanwhile, appellant was found guilty of the robbery charge in the District Court. Several months after his sentencing in the instant case, the District Court imposed a three to nine year sentence in the robbery case, to be served consecutively to the sentence previously imposed in the Superior Court.

Throughout this period, appellant wrote a considerable number of letters to the trial judge. One was written October 9, 1972, and was accompanied by a pro se motion for reduction of sentence. The motion was denied. On November 14, 1972, another pro se motion was sent by appellant to the trial court. It was short, imprecise, and conclusory, and sought withdrawal of the guilty plea.[1] No hearing was held on the motion, and it was denied on November 28. Appellant noted his appeal from that order pro se; we appointed counsel to represent him.

## II

■ Appellant contends that the Rule 11 guilty plea hearing was fatally defective in two particulars. One challenge is related to the District Court's later imposition of a consecutive sentence on the robbery charge which was before it. Rule 11 provides in part that the trial court may not accept a guilty plea until it determines, after addressing the defendant personally, "that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."[2] A failure to satisfy the requirements of the rule may result in setting aside a guilty plea. Mc-

---

1. We recognize that the standards applicable to a pro se motion are considerably more lax than the standards to be applied where counsel is involved. *See* Haines v. Kerner, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Sanders v. United States, 373 U.S. 1, 22, 83 S.Ct. 1068, 10 L.Ed.

2d 148 (1963). Nonetheless, as developed *infra*, appellant's motion was inadequate by any standards.

2. Super.Ct.Cr.R. 11 is identical to Fed.R. Crim.P. 11.

Carthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Appellant argues that his plea must be set aside because the Superior Court judge did not advise him that the District Court judge later might impose a consecutive sentence, so appellant's plea in Superior Court was not tendered with understanding of its full consequences. We disagree.

■ The first consideration is a practical one. At the time of the Rule 11 hearing, it was appellant—rather than the Superior Court judge—who was peculiarly aware of his own District Court case. The record reflects that the plea was accepted before the trial court was made aware that a District Court proceeding was pending. Rule 11 scarcely may be interpreted to require a trial judge to be certain a defendant understands the possible future consequences of something of which the court properly is unaware.

■ Nor does appellant's argument withstand legal analysis. Rule 11 does not require an explanation by the trial court of all collateral consequences of a guilty plea. E. g., Smith v. United States, 116 U.S. App.D.C. 404, 324 F.2d 436 (1963), cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L. Ed.2d 975 (1964); United States v. Cariola, 323 F.2d 180 (3d Cir. 1963). The Superior Court judge was not required to go beyond the case before him. With respect to it, he properly satisfied himself that appellant's plea was tendered voluntarily and with an awareness of its direct consequences. *See* Brady v. United States, 397 U.S. 742, 754–755, 90 S.Ct. 1463, 25 L.Ed. 2d 747 (1970). There was no obligation to explore the possibility of consecutive sentences arising from separate indictments.[3] Hinds v. United States, 429 F.2d 1322 (9th Cir. 1970). In no sense could it validly be said that the later District Court sentence was a "consequence" of the Superior Court guilty plea.

■ Appellant further contends that the Rule 11 hearing was fatally flawed by the trial court's statement that there could be no appeal from the plea. It is claimed that the plea did not remove the right to appeal from an unlawful sentence, and hence that appellant was misled. However, assuming the technical inaccuracy of the court's statement, the fact that it was somewhat over-restrictive could not be said to have induced appellant to enter a plea of guilty. (Appellant does not so argue; the claim of prejudice on this point is understandably rather vague.) The Rule 11 hearing cannot be said to have been invalidated by the references by the court and appellant's trial counsel to the lack of a right to appeal, for as a practical matter virtually every possible avenue of appeal is waived by a guilty plea.[4] And, while it is true that

3. Appellant places considerable reliance upon United States v. Myers, 451 F.2d 402 (9th Cir. 1972). Without discussing the persuasiveness of the reasoning reflected in that opinion, we find it inapposite. That case dealt with a defendant who received substantially contemporaneous state and federal sentences, and with a statute which provides that a term of federal imprisonment does not begin to run until a defendant is received at a federal correctional institution. 18 U.S.C. § 3568 (1970).

While our court system has some similarities to a state court system, nonetheless it " . . . clearly is within the parameters of the federal court system." Gay v. United States, 411 U.S. 974, 975–976, 93 S.Ct. 2152, 2153, 36 L.Ed.2d 697 (1973) (dissenting opinion); *see* Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); Huffman v. United States, 502 F.2d 419, at 422, n. 10 (D.C.Cir. 1974). Although this court and the Superior Court were created by Congress pursuant to Article I, § 8 of the Constitution, rather than under Article III, as is true with respect to the United States District Court and the Circuit Court of Appeals, the genesis of each court system is the same. Superior Court and District Court judges readily may direct that their respective sentences be consecutive or concurrent; the custodial authorities essentially are the same. The problem dealt with in *Myers* is not present here.

4. The Rule 11 hearing was not a sentencing hearing; that came two months later. Super. Ct.Cr.R. 32 relates to sentencing. Subsection (c)(3) thereof requires the trial judge to advise a defendant of his right to an appeal

no appeal was taken from appellant's adult sentence, we resolve the merits of that question *infra*.

### III.

Going beyond the claimed infirmities in the Rule 11 hearing, appellant contends that the trial court abused its discretion in denying the motion for withdrawal of the guilty plea. We cannot agree.

■ One point must be stressed. Appellant addressed numerous letters and two motions to the trial judge, and the briefs submitted in this court on his behalf reflect thorough professional care. In none of those documents is there any suggestion that appellant may be innocent of the charge to which he pleaded guilty. In considering a motion for withdrawal of a plea of guilty, such a factor not only is important, but may be conclusive. *E.g.*, Smith v. United States, *supra*. As the Circuit Court stated in Edwards v. United States, 103 U.S.App.D.C. 152, 155, 256 F.2d 707, 710, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82 (1958):

> Appellant does not try to say he did not do the act charged. He pleads only that, unknown to him, he *might* have been able to suppress the truth as to certain evidence of his crime, and thus, perhaps defeat justice. He cannot be heard to this end after a voluntary, knowing plea of guilty.

We need not decide whether the lack of a claim of innocence alone would defeat appellant's claim, although obviously it is a compelling consideration. Involved is Superior Court Criminal Rule 32(e) [identical to Fed.R.Crim.P. 32(d)], which states:

> A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct

manifest injustice the court may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The difference between the standards, *i.e.*, withdrawal before or after sentencing, is sound, for "[t]he imposition of sentence gives finality to the plea of guilty and there is then a judgment of conviction". High v. United States, 110 U.S.App.D.C. 25, 27, 288 F.2d 427, 429, cert denied, 366 U.S. 923, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961). "The more severe standard is applied to avoid motions for withdrawal based on disappointment in the terms of the sentence." Paradiso v. United States, 482 F.2d 409, 416 (3d Cir. 1973).

■ Irrespective of whether such a motion is made prior or subsequent to sentencing, the standard of appellate review is abuse of discretion. *E.g.*, Bethel v. United States, D.C.App. 215 A.2d 763 (1966); Thomas v. United States, D.C.App., 201 A. 2d 520 (1964); Paradiso v. United States, *supra*. Here, sentencing having occurred, the trial court was bound by Rule 32(e) to deny appellant's motion unless "manifest injustice" otherwise would result. To the extent that appellant's motion is susceptible of being understood, it argued essentially that he should be freed because his arrest "was based upon Suspicion and Hearsay Information of a Single Government alleged eye Witness . . . ." Considering the whole record, it is frivolous to contend that the trial court permitted manifest injustice to exist by denying appellant's motion.

### IV

In his motion to withdraw his guilty plea, appellant contended that he was a victim of ineffective assistance of counsel. He claimed essentially that his lawyer waived, without his knowledge, his right

"[a]fter pronouncing sentence in a case which has gone to trial on a plea of not guilty". No correlative duty is established by the rules

with respect to sentencing in a case in which a guilty plea has been accepted.

under the Fourth Amendment to be arrested pursuant to a warrant issued on probable cause. The apparent basis for that argument was appellant's statement that his arrest was predicated on "Suspicion and Hearsay Information". The trial court did not order a hearing on the ineffectiveness issue, which is argued to be error.

In his pro se motion, appellant cited 28 U.S.C. § 2255 (1970), but made no reference to the virtually identical applicable statute, D.C.Code 1973, § 23–110. The relevant provisions of § 23–110 are as follows:

(a) A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.

(b) A motion for such relief may be made at any time.

(c) Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto.
* * *

■ The principal purpose of the statute is to provide "an expeditious remedy for correcting erroneous sentences without resort to habeas corpus." *See* Sanders v. United States, 373 U.S. 1, 12, 83 S.Ct. 1068, 1075, 10 L.Ed.2d 148 (1963). If a claim for relief is couched purely in conclusory terms, with essentially no factual foundation, the motion may be denied without a hearing.[5] *Id.* at 19, 83 S.Ct. 1068; Dayton v. United States, 115 U.S. App.D.C. 341, 319 F.2d 742, cert. denied, 375 U.S. 947, 84 S.Ct. 357, 11 L.Ed.2d 277 (1963); Rodriguez v. United States, 473 F. 2d 1042 (5th Cir. 1973). Even though the allegations in a motion must be presumed true unless belied by the record, Eaton v. United States, 458 F.2d 704 (7th Cir.), cert. denied, 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed. 2d 135 (1972), we cannot say that the trial court erred in denying the motion without a hearing.

■ The narrowly limited claim of ineffectiveness which was advanced by appellant in his pro se motion has been enlarged upon considerably by counsel on this appeal.[6] Ineffectiveness claims have become regrettably common. *See, e. g.,* Angarano v. United States, D.C.App., 312 A.

---

5. Somewhat of an anomaly exists in this area of the law. Both D.C.Code § 23–110(e) and 28 U.S.C. § 2255 provide that the trial court "shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." The Supreme Court, however, has ruled that principles of res judicata are not applicable to § 2255 motions. Sanders v. United States, *supra.* Hence, the denial of a motion without a hearing is not per se a bar to a later motion which might have a cognizable degree of specificity. *But see* the dissenting opinion of Mr. Justice Harlan in Sanders v. United States, *supra*, 373 U.S. at 23, 83 S.Ct. 1068.

6. One claim of ineffectiveness is grounded on trial counsel's statement to the court, immediately after the plea of guilty was accepted, that "nobody would recommend probation for [appellant] under the circumstances of this particular case." Appellant was on parole from Michigan at the time of the offenses in this case; he was released at one point to the 24-hour a day custody of Bonabond but failed to comply with that condition of release; and he had a robbery charge pending in the District Court. In order to function effectively, defense counsel must be expected to reflect a certain amount of candor. The challenged statement constituted merely a realistic appraisal of the situation given by counsel in a successful effort to achieve a Youth Corrections Act evaluation for his client.

2d 295 (1973). While a defendant's rights must be protected fully, the courts also are obliged to protect both the judicial system and trial counsel from burdensome hearings on ineffectiveness claims which are patently frivolous. In Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958), the Circuit Court noted even then that such "motions and petitions have become so numerous," id. at 59, 259 F.2d at 789, and examined the problem in considerable detail.[7] Two statements in that opinion warrant quotation.:

> A convicted person cannot bring about a judicial hearing upon and determination of the trial competence of defense counsel by making allegations which, either on their face or after initial testing for verity, fail to indicate a lack of skill so great that the accused in realistic fact had not a fair trial. An accused cannot bring about a judicial evaluation of the quality of a defense; he is entitled only to allege and show that the proceeding was not a fair trial. [Id. at 63–64, 259 F.2d at 793–794.]

> If a movant under Section 2255 makes no allegations of ineffectiveness or incompetence of counsel, save in matters normally within the realm of counsel's judgment, he is not entitled to a hearing. [Id. at 64,· 259 F.2d at 794.]

■█ When a collateral attack is made on a sentence, no hearing is required where "there is no dispute as to the facts or where the allegations of fact can be fully investigated in the files and records of the case without the presence of the petitioner."[8] Mixen v. United States, 469 F.2d 203, 205 (8th Cir. 1972), cert. denied, 412 U.S. 906, 93 S.Ct. 2297, 36 L.Ed.2d 971 (1973). What did the trial judge know in this case? He knew the motion was vague and conclusory, with no facial validity. He knew there was no claim of innocence and no claim that the plea was not entered voluntarily. He knew of appellant's unique pen pal proclivities, for he had received numerous written communications from him previously. He knew that the case jacket reflected thorough diligence on the part of defense counsel; multiple pretrial motions were filed on appellant's behalf.[9] The trial court did not err in determining that "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief". D.C. Code 1973, § 23–110(c).

The multiplicity of arguments advanced on appellant's behalf necessitate a broad treatment of the subject matter, and there is an inevitable overlapping of the concepts dealt with herein. Most ineffectiveness claims arise in cases which have gone to trial, although certainly such a claim may be made where a guilty plea has been entered. Nonetheless, we inevitably must come back to the fact that there was a guilty plea here. In McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d, 763 (1970), the Supreme Court stated (at 774, 90 S.Ct. at 1450) that when a defendant admits his guilt,

> . . . he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious

---

7. *See also* Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945).

8. If a hearing is ordered, the court "may entertain and determine the motion without requiring the production of the prisoner at the hearing." D.C.Code 1973, § 23–110(d).

9. The following motions were filed by defense counsel: (1) Motion for an Order To In- spect and Copy Defendant's Medical Records at the District of Columbia Jail; (2) Motion To Dismiss Indictment; (3) Motion To Suppress All Statements Including Confessions Made by the Defendant to the Police; (4) Motion for Relief from Prejudicial Joinder of Offenses; and (5) Motion to Dismiss Count One of the . . . Indictment.

derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

No such allegations were made in this case, and the trial court's denial of the § 23–110 motion must be affirmed.

## V

Prior to sentencing, appellant was sent to The Youth Center for the preparation of an evaluation report. The Classification Committee, the Superintendent, and the Board of Parole all agreed unanimously that appellant should be sentenced as an adult. In Reed v. United States, D.C.App., 312 A.2d 775 (1973), we held that a sentencing judge "is free to follow such a report without making an express independent finding when he agrees with its conclusions based upon his own appraisal of the defendant's character and record." (*Id.* at 779.) In sentencing appellant as an adult as recommended, the trial court complied with *Reed.*

During the sentencing hearing, the trial judge entered into a brief philosophical discussion with defense counsel as to what prompts the Classification Committee to recommend an adult sentence for a particular defendant. The court referred to the fact that The Youth Center's facilities are limited, and stated:

And where they come to the conclusion in evaluating a candidate at the present time, that the man is going to be very difficult to work with, and some doubt

as to whether or not he will cooperate, that for the benefit of those that they do have in there, they don't want to load their program up too much with persons who are in this, to use their terms, "in this sophisticated category." They feel it might be detrimental to the others they have down there, who are not sophisticated.

The court then concluded that The Youth Center uses "what facilities they have for those that they think they can do the most good for."

Relying upon those comments, appellant contends that his adult sentence was not based upon a finding that he would not benefit from a YCA commitment, but rather upon a finding that others presently in The Youth Center would not benefit by the addition of appellant to their ranks. However, those observations by the court did not legally flaw the sentencing hearing. As noted, there was no need under *Reed* to have made any express finding. The transcript in full makes it clear that the court was well aware of the availability of a YCA commitment as a sentencing alternative, and that it indeed did find that appellant—as well as others in The Youth Center—would not derive benefit from a YCA commitment. The Act requires no more. Dorszynski v. United States, —— U.S. ——, 94 S.Ct. 3042, 41 L. Ed.2d —— (1974); Taylor v. United States, D.C.App., 324 A.2d 683 (1974).

Affirmed.