William H. PIERCE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 11754, 12643.

District of Columbia Court of Appeals.

Argued Sept. 7, 1978.

Decided June 12, 1979.

Rehearing En Banc Denied
Sept. 5, 1979.

Christopher B. Fager, Washington, D. C., for appellant.

Peter C. DePaolis, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Sil-

bert, U. S. Atty., John A. Terry, Michael W. Farrell, and Martin J. Linski, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.

NEWMAN, Chief Judge:

■ Appellant was convicted by a jury of first-degree murder while armed, first-degree murder, and carrying a pistol without a license.[1] On this appeal he contends that the trial court erred both by failing to conduct a proper inquiry upon his pretrial request for the appointment of co-counsel as well as by denying that request. These contentions require that we consider: (1) the question of the trial court providing co-counsel as a means of implementing the Sixth Amendment right to effective assistance of counsel; (2) the nature of the inquiry which the trial court must make in resolving a request for the appointment of co-counsel; and (3) the principles applicable to the trial court's proper exercise of discretion in appointing co-counsel. We find that the trial court failed to conduct a proper inquiry and thereby committed reversible error.[2]

On the afternoon of July 20, 1976, at a gathering at the home of Mrs. Ethel Graham in the District of Columbia, the appellant and the decedent, Raymond Battle, had a discussion that turned into a heated argument. Appellant left the gathering for approximately two hours during which time he placed a pistol on the front seat of his car. During this same time, Battle armed himself with a pistol taken from his car. Appellant then drove up to Mrs. Graham's home as Battle was leaving. Upon seeing

each other, the argument continued. At this point the evidence is conflicting, but suffice it to say that appellant shot Battle once in the head killing him and drove off. Battle's pistol was found on the street less than one foot from Battle's outstretched arm. Appellant voluntarily surrendered himself to the police on the morning of July 21, 1976.

It was the government's contention that this was a killing with premeditation and deliberation. The defense's theory was self-defense.

Approximately two weeks before the commencement of trial, trial counsel requested a continuance so that the court could appoint additional counsel. Toward this end, the appellant, who had been in preventive detention since his arrest, waived his right to a trial within the statutory limit of sixty days.[3] Excerpts from that hearing follow:

> COURT: [Defense Counsel], have you completed your pre-trial discovery in this matter? .
>
> DEFENSE COUNSEL: I not only have, but I think [the Assistant United States Attorney] has been more cooperative than any other United States Attorney. I have met with him in the course—
>
> \* \* \* \* \* \*
>
> DEFENSE COUNSEL: The most cooperative of the Assistant United States Attorneys that I have dealt with in any case.
>
> In this case I believe at this point the decision is, and I have discussed this fully with Mr. Pierce, to go forward to trial.
>
> However, Mr. Pierce would like to waive his right to have the trial within the statutory 60 days. The reason for this will become apparent in a moment.

---

1. Since first-degree murder is a lesser-included offense of first-degree murder while armed, the trial court should have either prevented the jury from returning a verdict on the lesser-included offense once it had returned a guilty verdict on the greater offense or in the alternative vacated the conviction of the lesser-included offense. *Franey v. United States*, D.C.App., 382 A.2d 1019, 1021 & nn.1 & 2 (1978). *See Ellis v. United States*, D.C.App., 395 A.2d 404, 406 n.1 (1978).

2. Appellant also raises the issue of ineffective assistance of counsel at trial, and challenges various allegedly erroneous and prejudicial trial court evidentiary rulings. Since we reverse on the inquiry issue, we need not reach these issues. We reject his challenge to the sufficiency of the evidence.

3. *See* D.C.Code 1973, § 23–1322(d)(2)(A).

I have explained to him fully that he has the right to put the Government to its proof by this Friday or next Monday. And he understands that, and he wishes to waive that right for a period of approximately 30 days. . . . The reason for this waiver, Your Honor, is that I have explained to Mr. Pierce that although I have had two years of trial experience in this Court, both felony and misdemeanor, I feel that it would be advisable if the case is going forward to trial, for there to be a senior experienced attorney in the case as well.

I did not ask for this at the time of arraignment. I was not certain where this case was going.

I feel that in view of the most serious nature of the charge involved, it is imperative that a second counsel be appointed in this case.

＊　　＊　　＊　　＊　　＊　　＊

I believe my own trial preparation is substantially completed. And the senior attorney whom I consult on the case would be able to go forward on to trial with far less than perhaps a first-degree murder case would normally entail on his part.

In response, the trial court asked for a proffer from the government of its evidence. The prosecutor outlined in detail the evidence the government intended to introduce.

PROSECUTOR: Your Honor, the deceased was a man by the name of Raymond Battle, and he knew the defendant in this case. They grew up together in North Carolina, Rockie Mountain, North Carolina.

On July 20th, 1976, Tuesday, there were a number of persons visiting at the home of a lady by the name of Ethel Graham, and everybody knew everybody else. There came a time at approximately 8:00 o'clock that night when the defendant and Mr. Battle got into an argument. The argument had to do with the fact that Mr. Pierce had loaned his car to a person named Roscoe Hudson, and Mr. Hudson had got a ticket because he was driving without a driver's license. In any event the deceased said to the defendant, "You shouldn't loan your car to people who don't have drivers' licenses." And Mr. Pierce, according to the witnesses started to argue with the deceased. And at one point the deceased finally said, "Look I know the real reason you are arguing with me. You think I have my eye on your wife." And at this point the defendant is quoted as saying: "I'm going to take care of you when I get off parole." And the deceased said, "Well, why don't we do it right now." At this point the defendant left and got into the car and drove away. And ten minutes later the deceased walked down to his car and got out a .38 calibre pistol and put it in his belt and sat on the front porch for a couple of hours, and then he said, "I have to go to work. I'm going to leave." He left with a man named James Hudson. He walked down to the car, and a number of people remained on the front porch. And as Mr. James Hudson and the deceased got into the deceased's car, the defendant pulled up in his car, pulled out a gun and pointed it at the deceased and said, "repeat what you said." And at this point the witnesses said the deceased was seeking cover and at this point the defendant fired one shot hitting the deceased in the back of the head, the left side of the ear from which the deceased died.

This is a preventive detention case. The defendant has a prior conviction for bank robbery in the mid 1960's in North Carolina.

That is basically the case, Your Honor.

The Government's evidence and argument will be that it was a cold blooded killing according to the several witnesses. And premeditation and deliberation came from the fact that there was an argument between the two men. The defendant left and secured a gun and came back without provocation and killed this man.

At this point, the court addressed trial counsel:

COURT: Now, [Defense Counsel], you have previously been acquainted with this version of the facts as alleged by the Government at this time?

DEFENSE COUNSEL: That is correct, Your Honor.

COURT: I would think under such circumstances [Defense Counsel], you would be more than competent and qualified and able to go forward insofar as the preparation and presentation of the defendant's defense in this matter.

Even after this show of confidence by the court in trial counsel's ability to handle the case, trial counsel persisted:

DEFENSE COUNSEL: Your Honor, if at any point in this case I question my own competence, I would vacate myself. My concern is not with my competence but with the term of experience I have had. I feel in view of the fact that if this case does not go to trial—and I should point out for the record that [the Assistant United States Attorney] has made a plea offer of second degree murder while armed. If this case does go to trial and in view of the fact that Mr. Pierce would get, if Mr. Pierce were convicted of first-degree murder, he would get a mandatory maximum of 20 years which he does understand. I feel in view of that, Your Honor, the appointment of a second counsel who has had substantial experience in felony one is called for.

I might point out to the Court that this is not a request or decision that I made lightly. I have struggled with this quite a bit with the last status, and I just want the Court to know that this request or decision is not one that I make lightly.[4]

At this point, the court granted trial counsel's request to approach the bench. Again, this time *out of the hearing of the appellant,* counsel stressed his need for a second attorney.

DEFENSE COUNSEL: Your Honor, for the Court's information I have talked with other attorneys and several judges both of this Court and one judge in the District Court on this point. Obviously first-degree murder is a capital offense, and if the Court is concerned with the financial aspect of the case, quite frankly from this moment I wouldn't accept another penny. It would all go to the attorney if the Court so direct.

My concern here . . . is not that I don't feel competent to present the case to the jury, but because of the seriousness of the case, I frankly would like the advice of senior counsel.

\* \* \* \* \* \*

COURT: You mean primarily for the purpose of offering you some consultation and advice; or primarily for the purpose of the actual trial of the case?

\* \* \* \* \* \*

DEFENSE COUNSEL: I think it is the actual trial. It might well be that after spending a number of hours with the attorney, should the Court appoint an attorney, and this attorney should say . . . you don't have a case. I hesitate to take this case to trial with the penalty involved at trial if judgment should go against the defendant based merely only on two years of trying cases in this Court.

\* \* \* \* \* \*

COURT: [I]t is rather difficult to accomplish what you have requested except by appointing other counsel in the case for the defendant. You see, I don't know how to accomplish it otherwise. And the only reason that would be done, in my judgment, is if there were reasonable indications that the defendant otherwise

4. Disciplinary Rule 6–101(A)(1) of the Code of Professional Responsibility as adopted by order of this court dated April 1, 1972, provides:
 (A) A lawyer shall not:
 (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

By bringing this issue to the attention of the court, trial counsel demonstrated his recognition of the duty imposed upon him by this Disciplinary Rule, as well as its antecedent Canon 6 and related Ethical Considerations 6–1 and 6–3.

would be without competent counsel in this case.

Now, I have not seen anything that would indicate that that is presently the case, thereby justifying the taking of that action.

The court expressed its concern that additional counsel would be reluctant to enter the case when all the preliminary work had already been done by trial counsel. Despite this concern, trial counsel renewed his request:

COURT: How do you suggest that I solve that problem? Would you suggest I remove you from the case? Would you suggest that I appoint someone else? If so, who?

DEFENSE COUNSEL: You see, I don't know who. Your Honor, is it not possible to appoint a second attorney in this case?

COURT: Who should that be?

DEFENSE COUNSEL: I can't proffer to the Court who that would be based on the fact I have had only really yesterday to try to talk to other attorneys who might be available.

I recognize, Your Honor, that I'm putting the Court at a bit of a difficult position.

I would not want to be entirely removed from this case for the simple reason I feel I have been associated with it from the inception. And I feel I have assets which the defendant can use.

COURT: I really don't know . . . I think maybe I had better think about this a little bit more, and think about the practical aspect of how it should be accomplished.

You see, if I could say that the defendant is presently without competent counsel, the solution would be simple.

DEFENSE COUNSEL: I understand that, Your Honor.

COURT: Or if I could say that it is necessary for additional counsel to be appointed to assist you, you see, so as to maintain that situation, the solution would be simple. But to bring someone in now, and whom I would presume to be somewhat of a very dubious position, in terms of who is in charge of the case; and you have got to understand that an attorney would be reluctant to enter this case under the circumstances.

DEFENSE COUNSEL: I was about to say, Your Honor, my request might be more properly phrased: Could you appoint another counsel to assist? But I recognize asking a man of senior experience to come in and assist puts a substantial strain on an attorney. And it would be an unusual attorney who could undertake that.

The court was then asked to postpone the matter for a week so that trial counsel could speak to attorneys about assistance. The appellant was not questioned about the matter except as to the waiver of his right to trial within sixty days.

The Assistant United States Attorney then volunteered the following comments:

PROSECUTOR: Just for the record, I have never had a trial with [Defense Counsel]. I have had a number of pre-trial conferences with him in this case, and that is one sign of competence to a prosecutor, and that he get as much discovery as possible. And I can categorically say that [Defense Counsel] has been in my office on several occasions, and he has got the Grand Jury minutes, and he has total command of the facts of the case. And he has total command of the issues from an advantage point. And as a prosecutor I have seen far and few attorneys that have been as diligent over pre-trial preparation as [Defense Counsel] has been in this case.

One week later on September 21, 1976, while appellant was in the courthouse cell block, counsel withdrew his request for additional counsel. The transcript of that day is as follows:

DEPUTY CLERK: United States versus Mr. William H. Pierce.

COURT: Is this gentleman in the cell block . . . ?

DEPUTY CLERK: Yes, Your Honor. I have called the cell block.

COURT: All right, sir . . . . .

TRIAL COUNSEL: Mr. Pierce is downstairs I have spoken to him, and I was also speaking with [the Assistant United States Attorney]. As the Court may recall this case is up to ascertain my request on counsel.

I would like to advise the Court that I have spoken at length with my client today, and we have decided to proceed with me as counsel in this case.

If the Court would like to bring him in to verify this, I can represent as an officer of the Court that he is satisfied.

I have spoken to other counsel—The Court may recall my question of competence and experience that we spoke of this at length at the bench; and I am satisfied at this point that the experience that I have is adequate to deal with this case at trial.

COURT: Very well. This matter will be continued pursuant to the previous setting the trial on November 2nd.

DEFENSE COUNSEL: November 2nd?

COURT: Yes.

DEFENSE COUNSEL: Does the Court need to question Mr. Pierce directly.

COURT: No, sir, your representations are completely adequate for that purpose . . . . .

DEFENSE COUNSEL: Thank you, Your Honor, I will now talk to him in the cell block downstairs.

 The right to counsel has been deemed "fundamental and essential to a fair trial," *Gideon v. Wainwright*, 372 U.S. 335, 340, 83 S.Ct. 792, 794, 9 L.Ed.2d 799 (1963), but more than the presence of counsel is needed to effectively meet the mandate of the Sixth Amendment. It is the right to effective counsel that is deemed essential. *See McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). When the court fails to appoint counsel who is competent to properly represent a defendant, given the particular

circumstances of an individual case, the right to a fair trial under the Due Process Clause of the Fifth Amendment is also implicated. *See Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Gideon v. Wainwright, supra*. These rights, like other constitutional safeguards "are to be jealously preserved for the benefit of the accused." *Glasser v. United States*, 315 U.S. 60, 67, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942). The duty rests "[u]pon the trial judge . . . of seeing that the trial is conducted with solicitude for the essential rights of the accused." *Id.* at 71, 62 S.Ct. at 465. It is the trial court's duty to use "sound and advised discretion . . . and with a caution increasing in degree as the offenses dealt with increase in gravity," *Patton v. United States*, 281 U.S. 276, 312–13, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930), to ensure the integrity of the trial and all the concomitant proceedings. *See Glasser v. United States, supra*, 315 U.S. at 71, 62 S.Ct. 457, in which *Patton* is also cited.

In keeping with the court's duty to safeguard the defendant's right to effective assistance of counsel, the District of Columbia Criminal Justice Act of 1974, D.C.Code 1978 Supp., §§ 11–2601–09, was passed. This statute calls for a plan to provide legal representation to indigent defendants in criminal cases. In accordance with the statute's mandate, the Joint Committee on Judicial Administration promulgated in November 1974 the "Plan for Furnishing Representation to Indigents under the District of Columbia Criminal Justice Act" (Plan). This Plan allows the court, not only to appoint counsel where "a person is financially unable to obtain adequate representation . . . ," Plan, § IV, but, "[i]n the interests of justice . . . [to] substitute one appointed counsel for another at any stage of the proceeding." *Id.* The Plan also provides that "[i]n an extremely difficult case, where the court finds that it is in the interest of justice to appoint two attorneys to represent one defendant, . . . two attorneys may be appointed." *Id.*[5]

---

5. Under the federal plan for the appointment of counsel as incorporated in 18 U.S.C. § 3005

(1976), a person accused of a capital offense is entitled as a matter of "absolute right to addi-

Thus, the court is given two alternatives when faced with a pretrial request for additional counsel. If it decides that the case is extremely difficult, the court may appoint additional counsel. On the other hand, "in the interest of justice" the court may substitute one appointed counsel for another even where the court finds the case not to be an "extremely difficult" one within the meaning of the Plan. In making this decision, the court must construe the phrase "extremely difficult". Since the legislative history of the statute is scant and basically uninformative on this point,[6] the trial court must be guided by the plain meaning of the phrase. In any event, the determination can be made only after an inquiry that establishes the nature and complexity of the case. The exercise of discretion in this regard to be proper, "must be guided by considerations capable of rational formulation," *Berryman v. United States*, D.C.App., 378 A.2d 1317, 1320 (1977), and not exercised "arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances of the law, and directed by the reason and conscience of the judge to a just result." *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). Accomplishment of this end depends upon there having been collected a body of information upon which the trial court can make its decision. "An informed choice . . . requires that the trial court's determination be based upon and drawn from a firm factual foundation." *Johnson v. United States*, D.C.App., 398 A.2d 354, 364 (1979). Only from this foundation can we be assured that the trial court's discretionary determination was essentially "rational" and "right and equitable under the circumstances." The just re-

sult is then inextricably dependent upon the trial court's being informed of all the relevant factors pertinent to the making of its decision. *See United States v. Lewis*, 157 U.S.App.D.C. 43, 54, 482 F.2d 632, 643 (1973). Only a sufficient inquiry could form the principled basis for the proper exercise of this discretion. *See Punch v. United States*, D.C.App., 377 A.2d 1353, 1359 (1977). In the words of Mr. Justice Frankfurter, "We must not invite the exercise of judicial impressionism. . . . Discretion without a criterion for its exercise is authorization of arbitrariness." *Brown v. Allen*, 344 U.S. 443, 496, 73 S.Ct. 397, 441, 97 L.Ed. 469 (1953) (separate opinion). *See generally Johnson v. United States, supra*. If, after an appropriate inquiry, the court finds that this case is not extremely difficult, then it must decide whether counsel presently representing the defendant can adequately meet the demands of a proper defense and provide effective assistance of counsel.[7]

In the case at bar, we are presented with a similar contention as was the subject of our holdings in *Monroe v. United States*, D.C.App., 389 A.2d 811 (1978), and *Farrell v. United States*, D.C.App., 391 A.2d 755 (1978). In those cases, we held that where the trial court is faced with a pretrial claim of ineffective assistance of counsel, the trial court has a "duty to ensure that the assistance thereby rendered to an accused comports with at least the minimum level of competence consistent with our standards of the fair administration of justice." *Monroe v. United States, supra* at 816. We adopted the *McMann v. Richardson* standard of performance of counsel, "that effective representation by counsel [must be]

---

tional counsel when requested." *Smith v. United States*, 122 U.S.App.D.C. 300, 307, 353 F.2d 838, 845 (1965), *cert. denied*, 384 U.S. 974, 86 S.Ct. 1867, 16 L.Ed.2d 684 (1966). The decision of the Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), invalidating certain types of death penalty statutes did not affect the provisions of 18 U.S.C. § 3005. *United States v. Watson*, 496 F.2d 1125, 1127 (4th Cir. 1973), *See* Annot., 71 A.L.R.3d 453 (1976).

6. *See generally* H.R.Rep. No. 1172, 93d Cong., 2d Sess. (1974); S.Rep. No. 966, 93d Cong., 2d Sess. (1974); H.R.Rep. No. 1295, 93d Cong., 2d Sess. (1974) (Conference Report).

7. Of course, if the trial court, after appropriate inquiry, determines the request is not justified, it may deny it.

'within the range of competence demanded of attorneys in criminal cases.'" *Monroe v. United States, supra* at 819, quoting *McMann v. Richardson, supra*, 397 U.S. at 771, 90 S.Ct. 1441. In adopting this standard, we found that the court was under a constitutional duty to make a sufficient inquiry on the record to determine the nature and scope of the Sixth Amendment pretrial claim. In addition, the court must make appropriate findings of fact. We did not delineate the exact contours of the inquiry that would satisfy the commands of the Sixth Amendment since the inquiry "is necessarily dependent upon the circumstances presented in each individual case, and thus must be committed to the sound discretion of the trial court." *Id.* at 821.

The necessity of the inquiry mandated by our holdings in *Monroe* and *Farrell* arises from a pretrial assertion of a claim by the defendant of ineffective assistance of counsel. Likewise, where a defendant requests the appointment of co-counsel, an inquiry by the court is mandated. The nature and scope of such an inquiry turns on the basis for the request for co-counsel. Where such a request is based *solely* on the claim that an additional attorney is necessary to meet the rigors of an "extremely difficult case" with its concomitant degree of required preparation and presentation, an inquiry sufficient to satisfy the court that the case fits the standard of "extremely difficult" may well be enough. Conversely, however, where there is a suggestion that the appointment of co-counsel is necessary to safeguard the defendant's Sixth Amendment right to effective representation by counsel, a fundamentally identical claim is thereby being made as was dealt with in *Monroe* and *Farrell*. In such cases, the type of inquiry mandated by *Monroe* and *Farrell* must be conducted. Since the time necessary to ascertain the defendant's thoughts concerning his attorney's need for assistance—or replacement—is not too much to require of the court to ensure a well-reasoned decision and a complete record for review, we have required the court to make an inquiry of the defendant when necessary. *Monroe v. United States, supra* at

821. We believe in the case *sub judice* that this sort of inquiry was in fact necessary because the record is devoid of the defendant's views concerning his attorney's claim of inexperience. The defendant did not bring his own complaint before the court either personally or through counsel. The record shows only counsel informing the court first of his inexperience and fears concerning trial presentation and then of his change of heart. Thus, the defendant's views which would be of record if he had initiated the request appear nowhere in these proceedings. Additionally, while the court and counsel for both sides conferred at the bench during the first hearing, the defendant who had the most to gain or lose from any decision was in effect ignored.

This is not the first time that we have mandated a personal inquiry of the defendant. We have required that the defendant be personally interrogated so that the record shows the defendant's *own* affirmative waiver of his right to assistance of counsel, *Gibson v. District of Columbia*, D.C.App., 221 A.2d 715 (1966), his waiver of his right to a jury trial, *Hawkins v. United States*, D.C.App., 385 A.2d 744, 746 (1978); *Banks v. United States*, D.C.App., 262 A.2d 110, 111 (1970); *Jackson v. United States*, D.C. App., 262 A.2d 106, 108–09 (1970), his entering a plea of guilty or *nolo contendere, Bettis v. United States*, D.C.App., 325 A.2d 190, 193 (1974); *Durantes v. United States*, D.C.App., 309 A.2d 321, 321–22 (1973), his desire to be represented by counsel who also represents a codefendant, *Lord v. District of Columbia*, D.C.App., 235 A.2d 322, 323 (1967), and we have approved of such a procedure with respect to the defendant's waiver of a double jeopardy defense. *Mason v. United States*, D.C.App., 346 A.2d 250, 252 (1975). In short, these decisions reflect a concern by this court that, in certain instances, the accused must be fully informed not only of fundamental guarantees—which only exist to protect the accused—but of court proceedings that are basic to the accused's ability to make informed decisions about strategically important matters, and thus aid the court in its own decision-making role.

After the trial court conducts the type of inquiry that we mandate and concludes that the claim is valid, it may provide relief either by appointing co-counsel or by appointing new counsel.

■ In the case at bar, once trial counsel announced his inability to handle the proceedings unassisted, a substantial question as to the constitutional integrity of the proceedings was raised for the court's consideration. The court was then under a duty to make an inquiry of the *defendant* as well as his counsel to determine whether an additional or a substitute counsel should be appointed. The trial court promptly and rightly inquired into the nature and complexity of the case based upon the defense's as well as the prosecution's proffers. While recognizing its duty to protect appellant's Sixth Amendment right to effective assistance of counsel, the court tentatively made the decision that his case did not require the appointment of an additional attorney. Once the court tentatively made the decision that this was not an "extremely difficult case," there was no inquiry sufficient to determine whether counsel could effectively represent the appellant "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson, supra* 397 U.S. at 771, 90 S.Ct. at 1449.

The court failed to ask any questions of defense counsel to elucidate what background and experience he had with first-degree murder cases, as well as the direction of his anticipated defense. The court instead stated its belief that counsel "would be more than competent and qualified and able to go forward insofar as the preparation and presentation of the defendant's defense in this matter." There having been no inquiry, there were no facts of record to support this statement.

■ The court also failed to make inquiry of the appellant to determine whether or not he was satisfied with his attorney even though it had two opportunities to question him. At the September 14 status hearing, not only was the appellant not questioned, but the major portion of the discussion between the court and counsel took place at the bench out of the defendant's hearing.[8] At the status hearing of September 21, when counsel withdrew his request for additional counsel, the defendant was not even present in court. He was, in fact, in the courthouse cell block and could have easily been brought up by court order so that a proper inquiry could be made.

Thus, when the court allowed the withdrawal of the request for additional counsel, it had no data from either the defendant or his counsel upon which to assess the request for additional counsel or to make an informed decision as to the advisability of trial counsel's proceeding without assistance. *See Farrell v. United States, supra* at 762. The trial court thus failed in its responsibility to "protect the right of an accused to have the [effective] assistance of counsel." *Glasser v. United States, supra* 315 U.S. at 71, 62 S.Ct. at 465 reaff'd in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426 (1978).

*Reversed.*[9]

HARRIS, Associate Judge, dissenting:

The lubricant that keeps the overburdened machinery of the trial court functioning as smoothly as it does is the broad discretion which historically has been vested in the trial judge in many areas of the law. In this case, the majority grievously erodes that discretion, as it finds reversible error in the handling of a pretrial request by a

---

8. An inquiry of the type mandated by this opinion as well as by *Monroe* and *Farrell* should take place in the presence of the defendant. Thus, save in the most unique circumstances, no portion of this inquiry should take place at a bench conference out of the hearing of the defendant.

9. Stripped of its rhetoric, our dissenting colleague's opinion does no more than manifest his disagreement with this court's holdings in *Monroe* and *Farrell.* While he, of course, has a right to disagree, he is bound by those cases. *See M. A. P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

defense counsel which not only was carefully considered by the trial judge, but which moreover was freely and unequivocally withdrawn by counsel. I respectfully dissent.

## I

The manner in which the subject matter of the majority opinion came before this court warrants explanation. We appointed an attorney who had not been trial counsel to represent appellant. He dutifully pursued the direct appeal, and also sought a new trial. His motion for a new trial was denied; a second appeal was taken from that ruling and was consolidated with the direct appeal.

A 43–page brief was filed on behalf of appellant. It was both thorough and well-prepared. Ineffective assistance of counsel at trial was claimed; certain evidentiary rulings and other actions of the trial court were challenged; and it was argued that the record does not contain sufficient evidence to sustain the first-degree murder conviction. No reference was made to the pretrial request for co-counsel which had been made and withdrawn. The government filed a 36–page brief; appellant filed a 20–page reply brief. Still no reference was made to the issue now deemed to be controlling.

The case was set for oral argument on April 6, 1978. On the morning of the scheduled argument, pursuant to a decision with respect to which I played no active part, the court sua sponte postponed argument and asked for supplemental briefs on court-specified issues related to the pretrial request for co-counsel. Thereafter, supplemental briefs were filed directed to the issues thus raised by the court. With the exception of the finding made by the majority in footnote 2 of its opinion to the effect that the "challenge to the sufficiency of the evidence" is rejected, the opinion deals exclusively with the pretrial proceedings.

Nothing could be more axiomatic than the concept that an otherwise valid conviction should not be set aside on appeal in the absence of reversible error. That proposition is so fundamental that it needs no support. I would, however, quote three noted legal scholars with whom I am in agreement:

> The central purpose of a criminal appeal is to ensure that the trial court decision was reached fairly and accurately. The lack of precise uniformity in doctrinal application, though not unimportant, is relatively of less concern. The appellate court's mission is to provide assurance that the defendant was convicted and sentenced on adequate evidence and without prejudicial error at trial or in the preliminary proceedings. In short, the chief function of a criminal appeal is to see that the appellant was not done an injustice.[1]

Assuredly there was no prejudicial error in the preliminary proceedings; assuredly no injustice was done to appellant. The majority opinion is a house of cards which collapses under even cursory analysis; it is both unprecedented and unsupported by any relevant authority.[2]

## II

A substantial portion of the majority opinion is occupied by excerpts from the

---

1. Carrington, Meador, and Rosenberg, Justice on Appeal 58 (1976).

2. The majority opinion does, of course, include a number of citations. Few have direct relevance; many run afoul of the wise counsel succinctly expressed by the late Judge Prettyman:

> Never rely upon a quoted extract from an opinion, unless it accurately sums up the decision upon the point. Sentences out of context rarely mean what they seem to say . . . . .

Prettyman, *Some Observations Concerning Appellate Advocacy*, 39 Va.L.Rev. 285, 295 (1953). Illustratively, see the edited quotation on p. 1242 of the majority opinion from the Supreme Court's decision in *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930). As even the portion of that sentence which has been deleted by the majority makes clear (*see id.*, at 312–13, 50 S.Ct. 253), that opinion dealt exclusively with the right to a trial by jury; it provides no support for the majority's disposition of this proceeding.

two pretrial hearings at which defense counsel's request that the trial court "appoint another counsel to assist" was first made and later withdrawn. I invite review of the totality of the discussions on the subject. The transcript demonstrates beyond question that defense counsel repeatedly expressed his belief in his competence to try the case, and at no point did the defendant reflect any dissatisfaction with his attorney.[3] In context, it is seen that defense counsel was confident of his ability to handle the trial, but, in recognition of the mandatory sentence for a first-degree murder conviction, wished to be able to consult with a more senior attorney, in part to aid in evaluating the desirability of plea bargaining.

At a status hearing on September 21, 1976 (one week after the request was made), defense counsel withdrew his request for the appointment of co-counsel. While the statement which he then made is included in the majority opinion, I quote it again, for it illustrates both his belief in his competence to try the case and the fact that he had achieved what had been his overriding goal, i. e., the opportunity to share his preparation for trial with other counsel:

> I would like to advise the court that I have spoken at length with my client today, and we have decided to proceed with me as counsel in this case.
>
> If the Court would like to bring him in to verify this, I can represent as an officer of the Court that he is satisfied.
>
> I have spoken to other counsel—the Court may recall my question of competence and experience, that we spoke of this at length at the bench; and I am satisfied at this point that the experience

that I have is adequate to deal with this case at trial.

Thus, the request was withdrawn, removing the need for the trial court to rule upon it. The trial proceeded, with essentially the sole issue being one of credibility. The jury's choice was between believing appellant and his wife—who contended that the deceased reached for his gun—or the neutral witnesses who testified that the deceased made no such attempt, and moreover was seeking to escape when he was shot.

## III

I stated earlier my belief that: "The majority opinion is a house of cards which collapses under even cursory analysis . . . ." Ante, at 1246. Actually, there are only three cards, and they should be examined more than cursorily. The first is an out-of-context quotation from the Supreme Court's opinion in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); the second and third are opinions of this court, written by the author of the majority opinion in this case, which are grounded upon that quotation. Farrell v. United States, D.C.App., 391 A.2d 755 (1978); Monroe v. United States, D.C. App., 389 A.2d 811 (1978).

The relevant quotation from the McMann v. Richardson decision is: "within the range of competence demanded of attorneys in criminal cases." 397 U.S. at 771, 90 S.Ct. at 1449. It has no significance in and of itself. McMann was a case in which the defendant entered a guilty plea, in part because he had confessed. Later, habeas corpus relief was sought, it being contended that the confession was inadmissible and hence that

---

3. The case was called for trial on November 2, 1976. That morning, appellant was prepared to, and did, take the initial steps towards tendering a plea of guilty to second-degree murder. The trial court commenced the type of colloquy called for by Super.Ct.Cr.R. 11, and advised appellant fully as to his rights. After appellant then formally expressed his desire to plead guilty, the following question and answer occurred:

THE COURT: And in arriving at that decision, Mr. Pierce, you have had the benefit of

advice and counsel of your attorney in this matter, and also the benefit and advice and counsel of your mother and other members of your family. Is that right, sir?

THE DEFENDANT: Yes, Your Honor.

Very shortly thereafter, appellant changed his mind and decided he wanted a trial, which began that afternoon. The point, however, is that not only did appellant never express any dissatisfaction with his counsel, but moreover he certainly did not lack any opportunity to do so had he been so disposed.

the guilty plea had not been intelligently made. The Supreme Court's holding in the case was direct:

> We hold, therefore, that a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus. [*Ibid.*]

I consider it to be indisputable that the *McMann* Court did not adopt any standard of competence for attorneys.[4] Within the context of its holding, the Court made the following comments which included the subject quotation (which is italicized for easy recognition):

> In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether the advice was *within the range of competence demanded of attorneys in criminal cases.* On the one hand, uncertainty is inherent in predicting court decisions; but *on the other hand defendants facing felony charges are entitled to the effective assistance of competent counsel.* [*Id.,* at 770–71, 90 S.Ct. at 1448–1449 (emphasis added; footnote omitted).]

Having said that, the *McMann* Court went on to make the following observations with which I am in full accord, and the sense of which underlies this dissent:

> Beyond this we think the matter, for the most part, should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts. [*Id.,* at 771, 90 S.Ct. at 1449.]

I find nothing inconsistent with those objectives in the trial court conduct of which the *Monroe* and *Farrell* divisions of this court were critical. By the same token, I agree with the underlying premise of both *Monroe* and *Farrell, i. e.,* if a defendant makes a pretrial complaint which properly is interpreted to raise a question as to the effectiveness of his counsel, that question should be considered carefully by the trial judge.[5] In any event, this case is not analogous to *Monroe* or *Farrell.* In each of those cases, we dealt with a specific pretrial claim by the defendant that counsel was devoting insufficient attention to the case—a claim of ineffective assistance of counsel. Here we have only a request by counsel, made as he expressed his confidence in his own ability to try the case, that co-counsel be appointed. The request was withdrawn a week later, obviously after considerable thought. In my view, there is no support in

---

**4.** Thus I confess to bewilderment at the following statement which was made in *Monroe v. United States, supra* :

> We therefore adopt the *McMann v. Richardson* standard of performance—*i. e.,* that effective representation by counsel is that which is "within the range of competence demanded of attorneys in criminal cases," *id.,* 397 U.S. at 771, 90 S.Ct. at 1449—as the proper criterion by which pretrial claims of ineffective assistance of counsel are to be measured. [389 A.2d at 819 (footnote omitted).]

**5.** I shall not comment at length on the *Monroe* and *Farrell* opinions. However, I find them to be somewhat inconsistent and inherently self-

contradictory, and I suspect they will give rise to pretrial abuses by defendants and prove difficult of application by trial judges.

I believe *Monroe's* statement that "the trial court must make appropriate *factual findings* " was unnecessary and ill-advised. 389 A.2d at 820. This is not one of those exceptional areas in which findings are required by rule, and an appropriate inquiry followed by a general conclusion should be adequate. *Cf. Brooks v. United States,* D.C.App., 367 A.2d 1297, 1304 (1976), and cases there cited. This is particularly true in a high-volume trial court such as the Superior Court, in which the judges readily become knowledgeable as to the abilities of the attorneys who practice before them regularly.

*Monroe* or *Farrell* (or any other authority) for a ruling that the trial judge's response to that request—both before and at the time of its withdrawal—was in any sense erroneous, much less constituting a basis for reversal.

## IV

My conceptual differences with my colleagues as to the disposition of this case are so basic that an expression of disagreement with specific portions of the majority opinion seems almost superfluous. Nonetheless, I briefly would direct attention to a few aspects of the majority's treatment of the issues which strike me as flawed.

(1) In footnote 4 of its opinion, the majority cites and relies upon the disciplinary rule that cautions an attorney not to accept the representation of a client in a matter which he is not competent to handle. Such reliance is misplaced. The record makes it clear that defense counsel repeatedly expressed confidence in his ability to handle the case; he simply expressed a wish—again, later withdrawn—to have the benefit of someone with greater experience as co-counsel "to assist."

(2) The majority takes the position that a more extensive inquiry by the trial judge was necessary "because the record is devoid of the defendant's views concerning his attorney's claim of inexperience. The defendant did not bring his own complaint before the court either personally or through counsel." *Ante,* at 1244. The fact is that the defendant never indicated any dissatisfaction with his attorney; he had no complaint. I have commented in footnote 3, *supra,* on the defendant's opportunity to complain had he wished to do so during the aborted guilty plea hearing. Additionally, it may be recalled that appellant had been held in preventive detention pending trial under D.C.Code 1973, § 23–1322. Subsection (d) of that statute requires trial within 60 days for a defendant who is so detained. The request for co-counsel took the trial date past the 60–day period, and appellant accordingly testified to his voluntary waiver of that provision. Thus, he was on the

stand at the September 14 status hearing but he expressed no dissatisfaction with his attorney. Unlike the defendants in *Monroe, supra,* and *Farrell, supra,* who spoke up on their own initiative in challenge to their attorneys prior to trial, appellant expressed no concern at all as to his attorney. The situation did not oblige the court to go further than it did and to initiate a probe as to whether appellant affirmatively was or was not "satisfied" with his lawyer.

(3) The majority states as a factual predicate to a portion of its discussion that "trial counsel announced his inability to handle the proceedings unassisted." *Ante,* at 1245. To me, the totality of the record makes it clear that the majority's statement is factually incorrect.

(4) After setting forth what I consider to be the inaccurate proposition just quoted, the majority states: "The court was then under a duty to make an inquiry of the *defendant* as well as his counsel to determine whether an additional or a substitute counsel should be appointed." *Ante,* at 1245. I ask: Why? (No authority is cited to support the majority's statement.) I reiterate that no complaint ever was made by the defendant; the only concern expressed—and it was quite limited—was by counsel. To be sure, there are times when a defendant should be heard from personally, as in a guilty plea hearing under Super.Ct. Cr.R. 11 or when a defendant elects to waive his right to counsel. However, counsel normally are deemed to speak for their clients, and when, as here, an attorney makes an affirmative representation as an officer of the court, he is entitled to belief. I would encourage the type of candor reflected by this record, and consider it to be untenable for the majority to decree that henceforth a defendant must be brought into the kind of discussion that occurred here.

(5) The majority next states that: "The court failed to ask any questions of defense counsel to elucidate what background and experience he had with first-degree murder cases, as well as the direction of his anticipated defense." *Ante,* at 1245. There are

three responses to that sentence. First, I do not believe the trial court "failed" in any aspect of its handling of the unusual problem which arose in this case. Second, there can be no meaningful relevance to an attorney's experience with first-degree murder cases, unless the majority intends to take the position that only lawyers who have tried first-degree murder cases are fit to try first-degree murder cases. Third, I see no proper basis for our directing the trial judge to press for an explanation of defense counsel's "anticipated defense." To give such information to the judge is, of course, simultaneously to give it to the prosecutor, and such a revelation in many cases would disserve a defendant's interests.[6]

(6) Immediately after the sentence which I have discussed in the preceding paragraph, the majority states:

> The court instead stated its belief that counsel "would be more than competent and qualified and able to go forward insofar as the preparation and presentation of the defendant's defense in this matter." There having been no inquiry, there were no facts of record to support this statement. [*Ante,* at 1245.]

To be sure, the court did not inquire into defense counsel's experience in first-degree murder cases, nor, in my view, should it have. The quoted comment by the trial judge, however, must be considered in its context. The record reflects that the trial court quite properly requested a proffer from the government as to what its evidence would show. The prosecutor then gave what the evidence later proved to be an accurate capsulization of the government's proof. *Ante,* at 1239. The court then asked defense counsel if he "previously [had] been acquainted with this version of the facts as alleged by the Government at this time?" *Ibid.* On being assured by defense counsel that he was aware of such facts, then—and only then—did the trial court express the conclusion quoted immediately above. From the govern-

ment's proffer, the experienced trial judge readily could recognize that the case was not complex; illustratively, there was no constitutional issue, no insanity issue, and no identification issue. There was no real issue except one of credibility as to appellant's self-defense contention. Thus, in my opinion, the trial judge assuredly did make an appropriate inquiry, and his conclusion based on the responses thereto was supported by the record.

(7) The majority appears to be influenced by the following circumstance which it notes: "At the status hearing of September 21, when counsel withdrew his request for additional counsel, the defendant was not even present in court." *Ante,* at 1245. A status hearing, of course, is not part of a trial, and a defendant has no presumptive right to be present at any or all of such hearings. Again, trial judges must have meaningful discretion as to when and how to handle certain pretrial matters.

## V

I have expressed my belief that no error was committed by the trial judge with respect to defense counsel's request—later withdrawn—for the appointment of co-counsel. My colleagues, of course, not only find error, but find reversible error. Unstated by the majority, however (beyond its general expressions of concern as to Sixth Amendment rights), is any specifically defined way in which the supposed error adversely affected the substantial rights of appellant. This court is bound by the fact that the District of Columbia Code includes what is essentially a codification of the harmless error rule. Section 11–721(e) of the Code provides:

> On the hearing of any appeal in any case, the District of Columbia Court of Appeals shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

---

6. This basically is the reasoning behind the proposition that defense counsel is free to waive an opening statement.

Reduced to its essence, what the majority is doing in this case is reversing a presumptively valid conviction because it apparently believes that the trial judge should have handled the request for co-counsel somewhat differently—and new discretion-inhibiting pronouncements are made in the process. The conviction is set aside and a new trial must be held, notwithstanding all of the following factors: (1) the trial judge's manifestly careful consideration of the request; (2) defense counsel's assertion of his competence to try the case (which, notwithstanding the severity of the potential sentence, was not complex); (3) defense counsel's carefully considered and confident withdrawal of his request and his assertion of his client's satisfaction with that decision; and (4) the absence of any expression by the defendant of even the slightest dissatisfaction with his attorney. My analysis of the case leads me to conclude that the majority's ruling is unsupported either by reason or by any relevant authority.